UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

------------------------------------------------------

                                      :

JOSEPH A. GIRGIS, *et al.*,        :

                         :       CASE NO. 1:10-CV-590

           Plaintiffs,     :

                         :

vs.                          :       OPINION & ORDER

                         :       [Resolving Doc. No. 12]

COUNTRYWIDE HOME LOANS, INC.,  :

*et al.*,                       :

                         :

           Defendants.    :

                         :

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

     Defendants Countrywide Home Loans, Inc. ("Countrywide") and Bank of America Corporation ("BAC") move the Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs Joseph and Nermine Girgis's Complaint in this putative class action alleging unlawful lending practices. [Doc. 12.]  The Plaintiffs have responded. [Doc. 18.]

     For the following reasons, this Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion to dismiss.

## I.  Background

     Plaintiffs Joseph and Nermine Girgis sue Defendants Countrywide and Bank of America, alleging that the Defendants engaged in various predatory lending and loan servicing practices targeted at unsophisticated borrowers.  The case offers a near-perfect exemplar of the malady depressing our country- overextended borrowers reaching for property they cannot afford and lenders

Case No. 1:10-CV-590
Gwin, J.

facilitating loans they should have known could never be repaid.  The Girgises bring this suit as a putative class action, on behalf of themselves and all other Ohio residents for whom the Defendants originated and/or serviced loans in the past four years.

The Plaintiffs' claims arise out of mortgages the Plaintiffs obtained from Defendant Countrywide for two properties in the Miami, Florida area. [*See* Doc. 1-1 at 38, 61.] With respect to the first property, 19333 Collins Ave, Apt. 808, Sunny Isles Beach, Florida, ("Unit 808), the Plaintiff Joseph Girgis entered into two mortgage agreements dated September 19 and 20, 2006, agreeing to pay Defendant Countrywide $147,500.00 and $1,000,000.00, respectively. [Doc. 1-1 at 38, 51.]  On April 13, 2007, the Girgises entered into two additional mortgage agreements to purchase 19333 Collins Ave., Apt. 1101, Sunny Isles Beach, Florida ("Unit 1101"), in the amounts of $920,000.00 and $115,00.00.  [Doc. 1-1 at 61, 74.]

The Plaintiffs allege that the Defendants served as both originators and servicers of these mortgages. [Doc. 1-1 at ¶ 9.] The Plaintiffs claim that "individually and collectively" the Defendants engaged in illegal practices, including: failing to promptly post payments and assessing unwarranted late charges [Doc. 1-1 at ¶ 14]; charging  numerous late fees for a single missed payment [Doc. 1-1 at ¶ 15]; charging improper fees to reinstate defaulted mortgages [Doc. 1-1 at ¶ 18]; charging un-itemized "corporate advances" that are added to loan balances [Doc. 1-1 at ¶ 17]; "force-placing" unnecessary casualty insurance on the Plaintiffs' property [Doc. 1-1 at ¶ 19]; engaging in abusive debt collection practices, including harassing the Plaintiffs, failing to properly notify them of amounts due, and failing to make required disclosures in connection with their debt collection activities [Doc. 1-1 at ¶ 21].

The Plaintiffs bring claims under the Home Ownership Equity Protection Act ("HOEPA"),

-2-

Case No. 1:10-CV-590
Gwin, J.

15 U.S.C. § 1639 et seq.; the Truth in Lending Act ("TILA"), 15 U.S.C. § 1602 and 12 C.F.R. § 226.2(a)(17); the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, et seq., and the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. §§ 2606 and 2614.  The Plaintiffs also bring claims under Ohio law for violations of the Ohio Mortgage Brokers Act, Ohio Rev. Code § 1322.01 et seq., and for Civil RICO, for breach of fiduciary duty, for negligent and intentional misrepresentation, for civil conspiracy, for breach of contract, for fraudulent misrepresentation, for breach of the covenant of good faith and fair dealing, and for negligent and/or intentional infliction of emotional distress.

On April 20, 2010, the Defendants filed a motion to dismiss each of the Plaintiffs' claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Defendants allege that the Plaintiffs' Complaint lacks specific factual allegations and instead contains only legal conclusions. The Defendants say that even accepting the factual allegations in the Complaint that are adequately pleaded, all of the Plaintiffs' claims fail to state a claim upon which relief can be granted. [Doc. 12-1.] The Plaintiffs responded on June 18, 2010, arguing that their allegations are sufficient to withstand the Defendants' motion to dismiss. [Doc. 18.]

## II. Legal Standard

A court may grant a motion to dismiss only when "it appears beyond doubt" that the plaintiff fails to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45 (1957).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility requirement is not a "probability requirement," but requires "more than a sheer

Case No. 1:10-CV-590
Gwin, J.

possibility that the defendant has acted unlawfully."

Federal Rule of Civil Procedure 8 provides the general standard of pleading and only requires that a complaint "contain . . . a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 129 S. Ct. at 1949 (citations removed).

In deciding a motion to dismiss under Rule 12(b)(6), "a court should assume the[] veracity" of "well-pleaded factual allegations," but need not accept a plaintiff's conclusory allegations as true. Id. at 1949-51.

### III. Analysis

*1. Allegations Against Bank of America*

The Defendants move to dismiss all claims against Defendant Bank of America Corporation ("BAC"). They claim that the Plaintiffs make no specific factual allegations against BAC and instead are suing BAC solely in its capacity as the corporate parent of Defendant Countrywide. They argue that because parents and subsidiaries are separate entities, Countrywide's actions should not be attributed to BAC, and all claims against BAC should be dismissed. [Doc. 12-1 at 4.]

However, the Plaintiffs' Complaint alleges that BAC participated in the allegedly illegal or improper conduct at issue as a servicer of the Girgis's mortgages. In particular, the Plaintiffs provide evidence that BAC caused the "force-placed" insurance policy to be opened on the Girgises' property. [*See* Doc. 1-1 at ¶ 19; pp. 83-86.] The Plaintiffs sue BAC not merely as the corporate parent of Countrywide, but as a servicer of their mortgages. BAC is therefore a proper party to this

-4-

Case No. 1:10-CV-590
Gwin, J.

suit.

*2. Plaintiffs' Claims Under the Truth in Lending Act*

In 1968, Congress enacted the Truth in Lending Act ("TILA") to "promote the informed use of credit by requiring disclosures about its terms and costs." 12 C.F.R. § 226.1(b).  It also "gives consumers the right to cancel certain credit transactions that involve a lien on a consumer's principal dwelling." *Id.*  Plaintiffs claim that  Defendants violated TILA by failing to disclose certain unspecified charges, and by improperly calculating and disclosing the loans' Annual Percentage Rate, in violation of 15 U.S.C. 1632(a).  [Doc.1-1 at 23.]  Plaintiffs also claim that they unilaterally rescinded their agreement with Countrywide, as authorized under 15 U.S.C. 1635, and that Defendants failed to honor their rescission.  [Doc. 1-1 at 23.]  Defendants argue that Plaintiffs have failed to state a claim under the Truth in Lending Act because they are barred by TILA's statute of limitations, because TILA applies only to mortgages on a consumer's principal dwelling, and because Plaintiff's complaint is not supported by sufficient factual allegations.  [Doc. 12-1 at 19-21.]

i. Plaintiffs' right to rescind under TILA

TILA states that a consumer's right to unilaterally rescind applies only to credit transactions "in which a security interest . . . is or will be retained or acquired in any property which is used as the *principal dwelling* of the person to whom credit is extended." 15 U.S.C. § 1635(a) (emphasis added).  *See also* 12 C.F.R. § 226.2(a)(11); *Barret v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 875 (6th Cir. 1998).  In their complaint, Plaintiffs state that in each mortgage transaction at issue a security interest was taken in the Plaintiffs' principal residence.  [Doc. 1-1 at ¶ 89.]  While it is true that, in considering a motion to dismiss, all well-pleaded factual allegations must be taken as true, a court "need not indulge in unreasonable inferences." *HMS Property Mgmt. Group Inc. v. Miller,*

Case No. 1:10-CV-590
Gwin, J.

69 F.3d 527 (Table), 1995 WL 641308 at *3 (6th Cir. Oct. 31, 1995) (*citing Blackburn v Fisk Univ.*, 443 F.2d 121, 124 (6th Cir. 1971)). Furthermore, "a court may disregard allegations contradicted by facts established by exhibits and attached to the pleading." *Id.* (*citing Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987)).

In their Complaint, the Plaintiffs state that they are citizens of Ohio, that they reside in Cuyahoga County, and that their residence is 3153 Adams Lane, Westlake, Ohio.  [Doc. 1-1 at ¶¶ 3, 22-23.]  The exhibits to the Complaint show that each of the relevant mortgages was secured by a condominium in Florida.  [Doc. 1-1 at 38, 61.]  Two of the mortgages attached to Plaintiffs' complaint refer to a "second home rider." [Doc. 1-1 at 41, 64.]  Furthermore, the mortgages at issue were taken out on two separate Florida properties, and "a consumer can have only one principal dwelling at a time." *Scott v. Wells Fargo Mortgage Inc.*, 326 F. Supp. 2d 709, 715 (E.D. Va. 2003) (*citing Scott v. Long Island Savings Bank*, 937 F.2d 738 (2d Cir. 1991).  No reasonable inference can be drawn from this set of facts other than that Plaintiffs intended the Florida properties to be used either as secondary residences or for investment purposes.  The Plaintiffs misrepresent the Florida properties as their principal residence.  Thus, Plaintiffs are unable to take advantage of TILA's rescission remedy, because the mortgages were not secured by their primary residence.

Even assuming that Plaintiffs intended to use one of the Florida properties as their principal dwelling, their claim for rescission, the only type of relief specifically sought in the complaint under TILA, fails. TILA's rescission remedy does not apply to so-called "residential mortgage" transactions, which are defined as mortgages in which "a security interest is created or retained against the consumer's dwelling *to finance the acquisition* or initial construction of such dwelling." 15 U.S.C. § 1635(e)(1), 15 U.S.C. §1602(w) (emphasis added); *see also, Berry v. Bank of America,*

Case No. 1:10-CV-590
Gwin, J.

*N.A.*, 2009 WL 4950463 at *4 (E.D. Mich. Dec. 16, 2009).  As the mortgages at issue here were for

the acquisition of the two Florida properties at issue, they are residential mortgage transactions

exempted from TILA's rescission provision.

ii. Availability of Damages under TILA

While the "principal dwelling" requirement is explicit with regards to a consumer's right to

rescission, TILA is not as clear when it comes to the availability of damages in such cases.  15

U.S.C. § 1603(3) exempts from TILA "credit transactions other than those in which a security

interest is or will be acquired in real property, or in personal property expected to be used as the

principal dwelling of the consumer . . . in which the total amount financed exceeds $25,000." Some

courts in the Sixth Circuit interpret this Section as creating an exemption for "credit transactions

other than those where the security interest relates to real property to be used as the borrowers

principal dwelling." *LaPorte v. Countrywide Home Loans*, 2009 WL 2905934 at *1 (E.D. Tenn.

Sept. 3, 2009). Such cases have held, in other words, that "if a transaction is not secured by the

borrower's principal dwelling, the transaction is not covered under TILA." *Taylor v. Countrywide

Home Loans*, 2010 WL 750215 at *7 (E.D. Mich. March 3, 2010).  This Court need not ultimately

rule on the issue of whether Plaintiffs state a valid claim for damages, as opposed to rescission, under

TILA, however, because, for the reasons set forth below, any such claim is time-barred.

iii. Statute of Limitations

Plaintiffs who claim damages under TILA face a one year statute of limitations. 15 U.S.C.

1640.  The statute of limitations begins to run on the date of the alleged violation, which occurs

when a creditor fails to make TILA's required disclosures prior to the consummation of the

transaction. *Wachtel v. West* 476 F.2d 1062, 1065 (6th Cir. 1973).  In other words, the statute of

Case No. 1:10-CV-590
Gwin, J.

limitations begins to run "when lender and borrower contract for the extension of credit." *Gates v. Ohio Savings Bank Corp.*, 2007 WL 2713897 at *3 (N.D. Ohio Sept. 17, 2007) (quoting *Wachtel*, 476 F.2d at 1065). Unlike the rescission remedy discussed above, the damages remedy under TILA does not contemplate a continuing violation that would extend the statute of limitations beyond the time of contracting.  *Wachtel,* 476 F.2d at 1065-66.

The Plaintiffs' last loan closed on April 13, 2007, and they filed their complaint on February 3, 2010. [Doc. 1-1 at 1, 81.] Unless somehow tolled, the Plaintiffs' claims for damages under TILA are time-barred.  In their response to Defendants' Motion to Dismiss, however, Plaintiffs suggest that TILA's statute of limitations may be subject to equitable tolling. [Doc. 18 at 3.]

Equitable tolling may be available "when inequitable circumstances prevent a plaintiff from suing before the statutory period runs." *Mills v. Equicredit Corp.*, 294 F. Supp. 2d 903, 908 (E.D. Mich. 2003).  The Sixth Circuit has held that equitable tolling may be appropriate for TILA claims in limited circumstances involving fraudulent concealment. *Jones v. TransOhio Savings Ass'n*. 747 F.2d 1037, 1043 (6th Cir. 1984).  To demonstrate that equitable tolling is appropriate, a plaintiff must show "not only that he exercised due diligence to discover his cause of action prior to the running of the statute, but also that the Defendant was guilty of some affirmative act of fraudulent concealment which frustrated discovery notwithstanding such diligence." *Hughes v. Cardinal Fed. Savings and Loan Ass'n*, 566 F. Supp. 834, 838 (S.D. Ohio 1983). Under such circumstances, the statute of limitations runs "from the date on which the borrower discovers or had reasonable opportunity to discover the fraud involving the complained of TILA violation." *Jones*, 747 F.2d at 1043.

In their complaint, Plaintiffs do not explicitly assert any fraudulent concealment on the part

-8-

Case No. 1:10-CV-590
Gwin, J.

of Defendants, or any other "inequitable circumstances," that would have hindered them from

discovering their cause of action under TILA. At the most, Plaintiffs say that Defendants generally

engaged in "unlawful, deceptive and unconscionable loan origination and servicing practices" and

"made negligent and intentional misrepresentations" in the course of their dealings with Plaintiffs.

[Doc. 1-1 at 18, 28.]  This is insufficient to create a reasonable inference that inequitable

circumstances prevented Plaintiffs from discovering their cause of action under TILA, or that the

limitations period should be equitably tolled in their favor.  The face of the complaint indicates that

the claims are time-barred.  As a result, Plaintiffs damages claims under TILA fail, and the Court

dismisses these claims.

*3. Plaintiffs Claims under the Home Ownership and Equity Protection Act*

Congress passed the Home Ownership and Equity Protection Act ("HOEPA")  in 1994 as

an amendment to the Truth in Lending Act.  It requires additional disclosures be made by creditors

in the case of certain high-interest home loans.  The Plaintiffs claim that Defendants violated

HOEPA by failing to conspicuously make the following disclosure:

> You are not required to complete this agreement merely because you received these disclosures or have signed a loan application. If you obtain this loan, the lender will have a mortgage on you home. You could lose your home and any money you have put into it if you do not meet your obligation under the loan.

15 U.S.C. § 1639(a)(1)(b).  Plaintiffs also claim that Defendants engaged "in a pattern or practice

of extending credit to consumers . . . without regard to their respective ability to repay in violation

of 15 U.S.C. § 1639(h)."  [Doc. 1-1 at 21.]  Finally, Plaintiffs again allege that Defendants did not

honor their decision to unilaterally  rescind their agreement. [*Id.*]

Again, Defendants' counter that Plaintiffs' claims are barred by statute of limitations, that

HOEPA applies only to mortgages taken out on a consumer's principal dwelling, and that Plaintiffs'

Case No. 1:10-CV-590
Gwin, J.

complaint consists of a mere recitation of statutory language. [Doc. 12-1 at 15-19.]

Since HOEPA is an amendment to TILA, and the former is incorporated into the latter, the same statute of limitations prescribed under 15 U.S.C. §1640(e) applies.  Moreover, the remedies available under HOEPA apply only to mortgages taken out on consumer's principal dwelling.  15 U.S.C. § 1639(a)(1) states that disclosures required under HOEPA apply only to mortgages "referred to in 15 U.S.C. § 1602(aa)," which in turn defines a "mortgage" as "a consumer credit transaction that is secured by the consumer's principal dwelling."  15 U.S.C. § 1602(aa).  Furthermore, "a HOEPA loan is a mortgage loan secured by a consumer's principal dwelling, other than a loan made to finance the dwelling's original construction or acquisition."  *Bretimeyer v. CitiMortgage, Inc.,* *2009 WL 3628005 at *6 (E.D. Mich. Oct. 30, 2009)* (quoting *Cunningham v. EquiCredit Corp.*, 427 *F. Supp. 2d 838, 841 (N.D. Ill. 2006)*.  As the only reasonable inference that can be drawn from Plaintiffs' Complaint is that the loans were not secured by their principal dwelling, and were intended to finance the acquisition of secondary residences or investment properties, these transactions fall outside the range of HOEPA.  Therefore, the Court dismisses the Plaintiffs' claims under HOEPA.

*4. Plaintiffs' Claims under Real Estate Settlement Procedures Act*

i. Claims Under Section 8 of RESPA

In Counts Five, Six, and Eighteen of their Complaint, Plaintiffs allege that the Defendants violated provisions of the Real Estate Settlement Procedures Act ("RESPA").  Counts Five and Eighteen are entirely duplicative and allege a violation of 12 U.S.C. § 2607 ("Section 8" of RESPA).  Specifically, Plaintiffs claim that Defendants "accepted fees for providing real estate settlement services when in fact these fees were for charges unrelated to real estate settlement services." [Doc.

Case No. 1:10-CV-590
Gwin, J.

1-1 at 26.] RESPA Section 8(b) provides that "no person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. 2607(b).

The Sixth Circuit has stated that Section 8 "creates an individual right to receive referral services untainted by kickbacks or fee-splitting." *In Re Carter*, 553 F.3d 979, 989 (6th Cir. 2009). There is a split in the case law, however, over what precise construction to give Section 8(b). A number of courts have held that 8(b) requires a defendant to "split" charges with a third party. *See Molosky v. Washington Mut. Bank*, 2008 WL 183634 at *6 (E.D. Mich. Jan 18, 2008) (holding that "RESPA does not recognize a cause of action for overcharges or 'unearned fees' in the absence of an allegation that the lender split the fees in question with a third party."); *Beard v. Worldwide Mortgage Corp.*, 354 F. Supp. 2d 789, 811 (W.D. Tenn. 2005) (granting plaintiff leave to amend complaint to include allegation that defendant split fees with a third party); *Haug v. Bank of Am., N.A.*, 317 F.3d 832, 836 (8th Cir. 2003) (holding that "8(b) is an anti-kickback provision that unambiguously requires at least two parties to share a settlement fee in order to violate the statute."); *Krzalic v. Republic Title Co.*, 314 F.3d 875, 877-82 (7th Cir. 2002) (affirming dismissal of 8(b) claims when plaintiff did not allege that defendant split fees with a third party); *Boulware v. Cossland Mortgage Corp.*, 291 F.3d 261, 264-68 (4th Cir. 2002) (affirming dismissal holding that 8(b) "only prohibits overcharges when a 'portion' or 'percentage' is kicked-back or 'split' with a third party.").

Other courts have held that, while 8(b) does not apply to mere overcharges, the requirement that a defendant split fees with a third party is not absolute, and that 8(b) applies to so-called "mark-

-11-

Case No. 1:10-CV-590
Gwin, J.

ups." That is, "a settlement service provider who marks up the cost of a service provided by a third party and keeps the marked up portion of the charge is violating [8(b)] by accepting a portion of the charge for services the vender did not perform." *Santiago v. GMAC Mortgage Group, Inc.*, 417 F.3d 384, 387-88 (3rd Cir. 2005).  *See also Kruse v. Wells Fargo Home Mortgage, Inc.*, 383 F.3d 49, 62 (2nd Cir. 2004); *Sosa v. Chase Manhattan Mortgage Corp.*, 348 F.3d 979, 982 (11th Cir. 2003) ("giving a portion of a charge is prohibited regardless of whether there is a culpable acceptor, and acceptor, and accepting a charge is prohibited regardless of whether there is a culpable giver.")

Plaintiffs do not allege either that the Defendants split fees with a third party, or that they "marked-up" charges.  The Plaintiffs merely recite the statutory language, alleging that "the Defendants, individually and collectively, accepted fees for providing real estate settlement services when in fact those fees were for charges unrelated to real estate settlement services." [Doc. 1-1 at ¶ 111.] The Plaintiffs provide no factual support for this allegation.  They do not state the amount or date of the fees the Defendants allegedly charged them, nor do they provide any evidence that the Defendant charged any real estate settlement fees that were not actually for settlement services.  *See Sosa*, 348. F3d at 984-84 (holding that plaintiffs failed to state claim under Section 8 of RESPA where they failed to provide factual allegations regarding creditor's accepting real estate settlement charge other than for services actually performed).  Accordingly, the Court finds that the Plaintiffs fail to state a claim for a violation of Section 8.

Moreover, the Plaintiffs' claims under RESPA Section 8 are time-barred.  A plaintiff may bring a claim under Section 8 of RESPA within one year of the date on which the violation occurred. 12 U.S.C. § 2614.  In the context of a mortgage loan transaction, the RESPA violation occurs when the loan closing takes place. *Meyers v. ABN Amro. Mortgage Group, Inc.*, 2005 WL 2396991 at *2

-12-

Case No. 1:10-CV-590
Gwin, J.

(E.D. Mich. Sept. 28, 2005) (citing *Snow v. Miss. Title Ins. Co.*, 332 F.3d 356, 359 (5th Cir. 2003)). Since the Plaintiffs' last loan closed on April 13, 2007, and this action was brought on February 3, 2010, their claims under Section 8 fall well outside the limitations period.  In their brief in opposition to Defendants' Motion to Dismiss, Plaintiffs do not deny that the limitations period has passed. However, they assert that the RESPA limitations period should be equitably tolled because Defendants "engaged in a course of conduct in which they fraudulently misrepresented loan charges throughout the origination and servicing of the loan."  [Doc. 18 at 6-7.]

The Sixth Circuit has not yet ruled on the question of whether the RESPA statute of limitations is subject to equitable tolling. *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009). However, federal statutes "are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute." *Zigdon v. LVNV Funding, LLC*, No. 1:09-cv-0050, 2010 WL 1838637 at *6 (N.D. Ohio Apr. 23, 2010) (quoting *Young v. United States*, 535 U.S. 43, 49 (2002)). Even assuming that the RESPA statute is subject to equitable tolling, Plaintiffs' complaint presents no basis for concluding that it should be tolled in their case.

Equitable tolling is appropriate "when inequitable circumstances prevent a plaintiff from suing before the statutory period runs." *Mills*, 294 F. Supp. 2d at 908.  Courts will generally consider five factors in determining whether equitable tolling is appropriate with regards to a particular plaintiff: "1) lack of notice of the filing requirement; 2) lack of constructive notice of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement." *Truit v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998).  Additionally, "in order to establish equitable tolling by the doctrine of fraudulent concealment, [plaintiffs] must allege and establish that 1)

Case No. 1:10-CV-590
Gwin, J.

defendants concealed the conduct that constitutes the cause of action; 2) defendants' concealment prevented plaintiffs from discovering the cause of action within the limitations period; and 3) until discovery, plaintiffs exercised due diligence in trying to find out about the cause of action." *Egerer, 556 F.3d at 422*.

Plaintiffs generally assert that the Defendants engaged in "unlawful, deceptive, and unconscionable loan origination and servicing practices" and "made negligent and intentional misrepresentations" [Doc. 1-1 at 18, 28.]  The complaint, however, does not contain any allegation that Defendants engaged in any act of fraudulent concealment that would have prevented Plaintiffs from discovering their cause of action under RESPA, neither does it contain any allegation that would warrant that inference.  As a result, Plaintiffs' claims under RESPA Section 8 cannot benefit from equitable tolling and are dismissed as time-barred.

ii. Claims under Section 6 of RESPA

Plaintiffs also bring claims under 12 U.S.C. § 2605 ("Section 6" of RESPA). Section 6 claims are subject to a three year, rather than one year, limitations period. 12 U.S.C. § 2614. Therefore, Plaintiffs' Section 6 claims arising out of the Plaintiffs' mortgage dated April 13, 2007 are not time-barred.  The Plaintiffs allege that Defendants violated Section 6 by failing to: a) properly post payments received from Plaintiffs in a timely manner, b) timely apply payments to principal and interest on Plaintiffs' accounts, c) make timely payments of escrow funds for payment of insurance premiums and property taxes, and d) timely and adequately acknowledge, investigate and respond to Plaintiffs' "qualified written requests" about the servicing of their loans and escrow accounts. [Doc 1-1 at ¶ 115.]

Section 6 does not cover the posting or application of payments, and Plaintiffs therefore do

Case No. 1:10-CV-590
Gwin, J.

not state a valid basis for relief based on their first three allegations in this claim.  Section 6 does,

however, require a lender to promptly respond to a "qualified written request" by a borrower for

information relating to the servicing of a loan.  12 U.S.C. § 2605(e)(1)(B). A qualified written

request must include a statement of reasons for the belief of the borrower that the account is in error,

*id.*, and a lender must respond by making any appropriate corrections to the account of the borrower.

12 U.S.C. § 2605(e)(2)(A).

Section 6 also covers the administration of escrow accounts and "requires that servicers who

collect funds from borrowers in order to pay taxes, insurance premiums, and other charges make

those payments in a timely manner so as to avoid penalties thereon. *Kevelighan v. Trott & Trott,*

*P.C.*, 2010 WL 2697120 at *4 (E.D. Mich. July 7, 2010) (quoting 12 U.S.C. § 2605(g)).  Plaintiffs

merely allege that Defendants did not make timely payments of escrow funds for payment of

property taxes and insurance premiums, without any supporting factual allegations.  However, the

loan documents attached to Plaintiffs' complaint refer in detail to "funds for escrow items" which

were to be paid by Plaintiffs to Defendants and used for payment of taxes and insurance premiums.

[Doc. 1-1 at 43-77.]

"Detailed factual allegations are not required" in a complaint, so long as there is sufficient

factual matter to raise a claim to the level of plausibility. *Iqbal*, 129 S. Ct. at 1940 (quoting *Twombly*,

550 U.S. at 555). The Plaintiffs have provided sufficient factual matter here.  Taken together with

the attached loan documents, the Plaintiffs' Complaint states a plausible claim for relief under

Section 6 of RESPA based on Defendant's failure to make timely payments of escrow funds.

Likewise Plaintiffs claim that Defendants failed to adequately respond to "qualified written requests"

is adequately pleaded to go forward at this stage.

Case No. 1:10-CV-590
Gwin, J.

*5. Plaintiffs' Claims Under the Fair Debt Collection Practices Act*

Plaintiffs claim that Defendants committed several violations of the Fair Debt Collection Practices Act ("FDCPA"). They allege that Defendants "used false, deceptive, or misleading representations or means" in violation of 15 U.S.C. § 1692e, "used unfair or unconscionable means to collect or attempt to collect a debt" in violation of 15 U.S.C. § 1692f(1), and "failed to provide required notices and disclaimers" in violation of 15 U.S.C. § 1692g(a). [Doc. 1-1 at 33-35.] The Court need not consider whether Plaintiffs have pleaded these claims with sufficient detail, because Defendants, as creditors, do not fall within the purview of the Act.

The FDCPA is "directed solely to the conduct of debt collectors, not creditors, and a creditor means any person to whom a debt is owed." *Bridge v. Ocwen Fed. Bank*, 669 F. Supp. 2d 853, 857 (N.D. Ohio 2009) (citing 15 U.S.C. § 1692a(4), (6)). Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or assessed to be owed or due *to another*." 15 U.S.C. § 1692a(6) (emphasis added).  "A creditor is not a debt collector for purposes of the FDCPA and creditors are not subject to the FDCPA when collecting their accounts." *Montgomery v. Huntington Bank*, 346 F.3d 693, 699 (6th Cir. 2003) (citing *Stafford v. Cross Country Bank*, 262 F. Supp. 2d 776, 794 (W.D. Ky. 2003). *See also Waddlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996) (holding that "a debt collector does not include the consumer's creditors").

Plaintiffs have stated in their complaint that their loans were originated and serviced by the Defendants. [Doc. 1-1 at 18.] Further, the loan documents attached to Plaintiffs' complaint clearly identify Countrywide as the lender.  [Doc. 1-1 at 38, 51, 61, 74.]  Since Defendants are not debt

-16-

Case No. 1:10-CV-590
Gwin, J.

collectors, but rather Plaintiffs' creditors, they are not subject to the FDCPA, and Plaintiffs' claims

under the Act are dismissed.

*6. Plaintiffs' Claims under Fair Credit Reporting Act*

The Plaintiffs claim that the Defendants violated the Fair Credit Reporting Act ("FCRA")

because they furnished information relating to Plaintiffs to a consumer credit reporting agency when

they "knew or consciously avoided knowing that the information was inaccurate" and "failed to

promptly . . . provide to the agency any corrections."  [Doc. 1-1 at 35-36.]

The only part of the FCRA that applies to furnishers of credit information is 15 U.S.C. §

1681s-2.  The remainder of the Act applies only to credit reporting agencies.  *Zamos v. Asset

Acceptance, LLC.* 423 F. Supp. 2d 777, 787 (N.D. Ohio 2006).  Plaintiffs assert their claims under

15 U.S.C. § 1681s-2(a), which outlines the duties of furnishers to provide accurate information to

credit reporting agencies.  This portion of the act, however, does not create a private cause of action.

*Id.* at 787-788.  Rather, the language of the statute explicitly states that the private remedy made

available under the Act for willful or negligent violations does not apply to 1681s-2(a), and that only

"federal agencies and officials" or "state officials" may enforce its provisions.  15 U.S.C. § 1681s-

2(c)-(d).  Thus, to the extent that the Plaintiffs allege violations of 1681s-2(a), they have failed to

state a valid claim.

While it is clear that no private right to relief exists under 1681s-2(a), the question of whether

a private cause of action exists under 1681s-2(b), which creates duties for furnishers of information

upon notice of a dispute, is less settled.  The Sixth Circuit has stated that "while a consumer cannot

bring a private cause of action for a violation of a furnisher's duty to report truthful information, a

consumer may recover damages for a willful violation of 15 U.S.C. § 1681s-2(b)." *Bach v. First*

Case No. 1:10-CV-590
Gwin, J.

*Union Nat. Bank*, 149 Fed. App'x 354 (6th Cir. 2005) (*citing Stafford v. Cross Country Bank*, 262

F. Supp. 2d 776, 782-83 (W.D. Ky. 2003)).  *See also, Sweitzer v. American Express Centurion Bank,*

554 F. Supp. 2d 788, 794 (S.D. Ohio 2008).  However, other courts have held that "an individual

consumer has no private cause of action under 15 U.S.C. § 1681s-2(b)." *Zamos,* 423 F. Supp. 2d at

788 (citing *Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 502 (W.D. Tenn. 1999)).

In any case, a furnisher's duties under 1681s-2(b) arise only after it has received notice of a

dispute from a credit reporting agency.  15 U.S.C. §§ 1681s-2(b)(1), 1681i(a)(2).  The Sixth Circuit

has held that "if it is assumed that a private right of action exists under 1681s-2(b), the plaintiff must

show that the furnisher received notice from a consumer reporting agency, not the plaintiff, that the

credit information is disputed." *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853-54 (6th Cir.

2004).  *See also Stafford v. Cross Country Bank,* 262 F. Supp. 2d 776, 784 (W.D. Ky. 2003) (holding

that "a furnisher of credit information . . . has no responsibility to investigate a credit dispute until

*after* it receives notice form a consumer reporting agency") (emphasis in original).

To the extent that the Plaintiffs make any allegations at all under 15 U.S.C. § 1681s-2(b),

they do not allege that the Defendants received notice of a dispute from a credit reporting agency,

or even that they (Plaintiffs) reported a dispute to a credit reporting agency.  As a result, they fail to

state a valid claim for relief under the FCRA, and these claims must be dismissed.

*7. Plaintiffs' Claims under the Ohio Mortgage Brokers Act*

The Ohio Mortgage Brokers Act ("OMBA") is "designed in part to protect mortgage

borrowers from wrongful conduct by mortgage brokers." *Smith v. ABN AMRO Mortg. Group, Inc.,*

2007 WL 950334 at *11 (S.D. Ohio March 27, 2007) (citing *Myers v. Preferred Credit, Inc.*, 766

N.E.2d 612 (Ohio Com. Pl. 2001)).  The Plaintiffs allege that the Defendants violated  OMBA,

Case No. 1:10-CV-590
Gwin, J.

specifically Ohio Rev. Code § 1322.07, which prohibits, among other things, "engag[ing] in conduct

that constitutes improper, fraudulent, or dishonest dealings." O.R.C. §1322.07(C).  Section 1322.07,

however, does not apply to lenders, but rather to mortgage brokers and "loan originators" (i.e. loan

officers employed by a mortgage broker).  O.R.C. §§ 1322.07, 1322.01 (D),(G).  In their complaint,

Plaintiffs assert that Defendants are mortgage brokers under the definition of OMBA because they

act as their own brokers.  [Doc. 1-1 at 24.]  However, the Plaintiffs' legal conclusions need not be

accepted as true.   Under the OMBA, a "'[m]ortgage broker' does not include . . . a person that

makes residential mortgage loans and receives a scheduled payment on each of those mortgage

loans." O.R.C. § 1322.01(2)(a).  The Plaintiffs state in their Complaint that the Defendants engage

in lending and loan servicing.  [Doc. 1-1 at 1, 5, 8.]  As the Defendants are therefore not mortgage

brokers as defined in the Act, the Plaintiffs fail to state a valid claim under the Ohio Mortgage

Brokers Act.

*8. Choice of Law for State Law Claims*

        The Defendants argue that, under their agreement with the Plaintiffs, all disputes relating tho

the subject properties, excepting Federal Law claims, must be asserted under Florida law.  [Doc. 12-

1 at 13.]  The language of the contract itself does not necessarily suggest such a broad construction.

Each primary mortgage contains a choice of law provision which states: "this security instrument

shall be governed by the federal law and the law of the jurisdiction in which the property is located.

All rights and obligations contained in this security instrument are subject to any requirements and

limitations of applicable law." [Doc. 1-1 at 48, 71.]  Each secondary mortgage contains a provision

which states: "the state and local laws applicable to the mortgage shall be the laws of the jurisdiction

in which the property is located."  [Doc. 1-1 at 57, 79.]

Case No. 1:10-CV-590
Gwin, J.

When a court exercises diversity or supplemental jurisdiction over state law claims, "the choice-of-law rules of the forum state . . . govern the determination whether to enforce the . . . selection of . . . law." *Wallace Hardware Co. v. Abrams*, 223 F.3d 382, 391 (6th Cir. 2000) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 361 (6th Cir. 1993).  In this case the forum state is Ohio, so Ohio choice of law rules govern in deciding whether this Court will apply Florida law as per the choice of law provision in the mortgage document.

The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws, which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir.1987) (quoting *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio St.3d 436, 438-39, 453 N.E.2d 683 (1983))

In this case, the Restatement factors favor the application of Florida law.  Florida has the most substantial relationship to the transaction, because Florida is the state in which the transacted properties  are located.  Additionally, applying Florida choice of law would not be adverse to Ohio policy, nor does Ohio have a materially greater interest than Florida.  Having determined that the

Case No. 1:10-CV-590
Gwin, J.

choice of law provision is valid, the Court must now turn to determining the precise scope of the

provision.

The Sixth Circuit has held that similar provisions apply not only to claims arising under a

contract, but also to related tort claims. In *Banek, Inc. v. Yogurt Ventures U.S.A., Inc.*, the Sixth

Circuit held that a choice of law provision which stated that Georgia law was to govern "all rights

and obligations" pertaining to a franchise agreement was "sufficiently broad so as to cover [the

Plaintiffs'] fraud and misrepresentation claims" as well. 6 F.3d 357, 363 (6th Cir. 1993). The Court

based its holding on the fact that the fraud and misrepresentation claims were "directly" and not

"tangentially" related to the franchise agreement. *Id.*  Similarly, in *Baumgardner v. Bimbo Food

Bakeries Distribution, Inc.*, 697 F. Supp. 2d 801 (N.D. Ohio 2010), the court held that a choice of

law provision which stated that "the validity, performance, and interpretation of this agreement shall

be controlled and construed in accordance with the laws of New York" was broad enough to apply

to claims of tortious interference with contract and unjust enrichment.  697 F. Supp. 2d at 804-06.

The Court in *Baumgardner* noted that, while these tort claims were "not explicitly covered" by the

contract, they were nevertheless "not tangential" but rather "closely related to 'performance of the

agreement.'" *Id.* at 806; *see also Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139-40 (6th Cir.

1993) (holding choice of law provision applicable to fraud and misrepresentation claims when

Plaintiffs were not asserting "claims that arose incidentally of the contractual relationship" but rather

claims that "put the validity of the contract in issue.")

In the instant case, Plaintiffs' breach of contract claim is explicitly covered by the choice of

law provision. Their  claims of Breach of Fiduciary Duty, Negligent and Intentional

Misrepresentation, Fraudulent Misrepresentation, Civil Conspiracy, and Breach of Good Faith and

Case No. 1:10-CV-590
Gwin, J.

Fair Dealing are all closely, and not simply tangentially, related to the performance of the mortgage

agreements, and are therefore subject to the choice of law provision.  As a result, the Court will apply

Florida law to these claims.

Plaintiffs' allegations of infliction of emotional distress and violations of civil RICO are not

as directly derived from the contract itself, and thus it is not as clear that the choice of law provision

applies to these claims.  However, as discussed below, these claims fail to state valid claims under

either Ohio or Florida law, and thus the choice of law issue is immaterial.

*9. Intentional/Negligent Infliction of Emotional Distress*

i. Intentional Infliction of Emotional Distress

The elements of a claim for intentional infliction of emotional distress ("IIED") under Ohio

law are nearly identical to those under Florida law. Under Ohio law, the plaintiff must prove that (1)

the defendant either intended to cause emotional distress, or knew or should have known that its

actions would result in serious emotional distress; (2) defendant's conduct was so extreme and

outrageous as to go beyond all possible bounds of decency, and would be considered utterly

intolerable in a civilized community; (3) defendant's actions proximately caused injury to plaintiff

and (4) the mental anguish plaintiff suffered is serious and of such a nature that no reasonable person

could be expected to endure." *Croskey v. Universal Health Servs.*, 2009 WL 3756701 at *4 (Ohio

Ct. App. Nov. 6, 2009) (citing *Ashcroft v. Mt. Sinai Medical Center*, 588 N.E.2d, 280, 284 (Ohio Ct.

App. 1990). This requires "something beyond tortious or even criminal intent to cause harm."

*Croskey*, 2009 WL 3756701 at *4 (*quoting Yeager v. Local Union 20*, 453 N.E.2d 666, 667 (Ohio

1983).

Similarly, Florida law requires that "(1) the Defendants' actions were extreme and outrageous

Case No. 1:10-CV-590
Gwin, J.

beyond all bound of decencies and that (2) the Defendants intentionally or recklessly caused [the Plaintiffs] to suffer (3) severe emotional distress." *Walters v. Blankenship*, 931 So.2d 137, 144 (Fla. Dist. Ct. App. 2006). *See also, Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277, 278-79 (Fla. 1985).

Plaintiffs' claim for emotional distress simply alleges that Defendants "made material misrepresentations of fact and [were] negligent in a number of instances, including but not limited to, stating that the Representative Plaintiffs were obligated to pay amounts that were improperly or illegally accessed [*sic*]." [Doc. 1-1 at 23.]  Even taken together with the rest of the Complaint, this does not amount to a cognizable claim for intentional infliction of emotional distress under either Ohio or Florida law. There is no allegation that Plaintiffs suffered the type of extreme emotional distress needed to sustain a claim for IIED, nor are there any grounds to infer that Defendants engaged in the type of "extreme and outrageous" behavior necessary to establish such a claim, even if Plaintiffs' other allegations are taken as true.  Accordingly, the Court dismisses the Plaintiffs' claim for IIED.

ii. Negligent Infliction of Emotional Distress

Plaintiffs also fail to state a claim for negligent infliction of emotional distress under either Florida or Ohio law.  Under Florida law, unless a Plaintiff has suffered "a physical impact from an external force," the alleged mental distress must be manifested in the form of physical injury. *Willis v. Gami Golden Glades, LLC*, 967 So.2d 846, 850 (Fla. 2007) (*quoting Eagle-Picher Indus., Inc. v. Cox*, 481 So.2d 517, 526 (Fla. Dist. Ct. App.1985)). Under Ohio law, although a physical injury is not required, a Plaintiff must nevertheless suffer serious emotional distress that is "both severe and debilitating," and which goes beyond "mere upset or hurt feelings." *Paugh v. Hanks*, 451 N.E.2d

-23-

Case No. 1:10-CV-590
Gwin, J.

759, 765 (Ohio 1983).  Since Plaintiffs fail to allege any emotional distress, let alone distress severe enough to cause physical injury or rise to the level of "severe and debilitating," they fail to state a claim for negligent infliction of emotional distress.

*10. Civil RICO*

Florida's Civil RICO statute requires that a defendant engage in certain specified forms of criminal activity, or be involved in the collection of an "unlawful debt," meaning a debt that was incurred in violation of certain criminal statutes.  F.S.A. § 772.102, 772.103.  The Plaintiffs' Complaint does not allege which, if any, forms of criminal activity form the underlying basis for their Civil RICO claim.  To the extent that the Plaintiffs' civil RICO claim is based on any type of fraud, it would be subject to the heightened pleading standard of Federal Rules of Civil Procedure 9(b). *Rogers v. Nacchio,* 241 F. App'x 602, 608 (11th Cir. 2007).  To satisfy Rule 9(b), the Plaintiffs must set forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Id.* (quoting *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202, (11th Cir. 2001)).  Plaintiffs are unable to meet this standard since they  have made no such allegations in their Civil RICO claim, and allegations of fraud found throughout the rest of the complaint are vague and general.

Plaintiffs claims are insufficient under the Ohio civil RICO statute as well. Ohio courts have held that "[i]n order to allege a state RICO violation, the following elements must be pleaded *with specificity*: (1) that the conduct of the defendant involves the commission of two or more specifically

-24-

Case No. 1:10-CV-590
Gwin, J.

prohibited state or federal criminal offenses, (2) that the prohibited criminal conduct of the defendant

constitutes a pattern of corrupt activity, and (3) that the defendant has participated in the affairs of

an enterprise or has acquired and maintained an interest in or control of an enterprise." *Kondrat v.

Morris*, 692 N.E.2d 246, 253 (Ohio Ct. App. 1997) (citing Universal Coach, Inc. *v. New York City

Transit Auth., Inc.,* 629 N.E.2d 28, 32-33 (Ohio Ct. App. 1993)) (emphasis added). *See also Wilson

v. Marino*, 2007 WL 707524 at *6 (Ohio Ct. App. March 9, 2007). Further, "the failure of a plaintiff

to plead any of the elements necessary to establish a RICO violation results in a defective complaint

which cannot withstand a motion to dismiss as based upon a failure to state a claim upon which relief

can be granted." *State ex rel Fatur v. Eastlake*, 2010 WL 1254369 (Ohio Ct. App. 2010) (*quoting

Universal Coach,* 629 N.E.2d at 33), *But cf., Van Dorn Co., Cent. States Can Co. Div. v. Howington,

623 F. Supp. 1548 (N.D. Ohio 1985)*.  The Plaintiffs' Complaint does not allege that the Defendants

committed two or more specifically prohibited criminal offenses. It includes only a conclusory

statement that Defendants had "an agreement to conduct and participate . . . in the affairs of an

enterprise through a pattern of corrupt activity."  [Doc. 1-1 at 30.] These allegations do not have the

specificity which courts have required from an Ohio state Civil RICO claim.

   Finally, under federal RICO, a plaintiff must allege "(1) conduct (2) of an enterprise (3)

through a pattern of (4) racketeering activity." *Arnold v. Petland, Inc., 2010 WL 2301194 at *3 (S.D.

Ohio June 4, 2010)* (*citing Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)).  Plaintiffs have

not alleged that Defendants engaged in racketeering generally, or in any of the specific criminal acts

that qualify as racketeering under the federal RICO statute.  Further, it is not clear whether Plaintiffs

are alleging that Countrywide is itself an "enterprise," a liable "person," or both. Under federal

RICO, "a corporation cannot be named as the liable 'person' and simultaneously fulfill the

Case No. 1:10-CV-590
Gwin, J.

'enterprise' requirement as well." *Id.* (quoting *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir. 1989)).

Because Plaintiffs' complaint does not satisfy the requirements of a successful civil RICO claim under Florida, Ohio, or federal law, these claims must be dismissed.

*11. Breach of Contract, Breach of Good Faith and Fair Dealing*

In their breach of contract claim, Plaintiffs allege that Defendants were "contractually obligated to provide each of the Representative Plaintiffs a statutorily  legal [sic] loans and services as promised" and that their failure to comply with this contractual obligation constitutes a breach of contract.  [Doc. 1-1 at 30.]  Under Florida law, "in order to properly state a claim for breach of contract, a plaintiff must allege the existence of a contract, a breach thereof, and damages as a result of the breach." *De Sterling v. Bank of America, N.A.*, 2009 WL 3756335 at *2 (S.D. Fla. Nov. 6, 2009) (citing *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999)).  The Plaintiffs have alleged that they entered into a contract with the Defendants, and have attached copies of this contract to their complaint. They have further alleged that they suffered damages as a result of Defendants having breached this contract by failing to provide loans and services to Plaintiffs in the manner promised.  These allegations are sufficient at this stage of the litigation.

Plaintiffs also claim that Defendants breached an implied duty of good faith and fair dealing. To state a claim for a breach of good faith and fair dealing, a plaintiff must allege "a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence; but rather by a conscious and deliberate act, which unfairly frustrates the purpose and disappoints the reasonable expectations of the other party, thereby depriving them of the benefits of

Case No. 1:10-CV-590
Gwin, J.

the agreement." *CFBP, LLC v. Wells Fargo Bank*, 2010 WL 2136535 at *6 (M.D. Fla. May 26, 2010) (*citing Mount Sinai Med. Ctr. of Greater Miami v. Hendrcik & Struggles, Inc.*, 329 F. Supp. 2d 1309, 1313 (S.D. Fla. 2004).  Such an implied duty is a part of every contract.  *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir. 1999) (citing *County of Brevard v. Miorelli Eng'g, Inc.*, 703 So.2d 1049, 1050 (Fla. 1997)). However, the implied duty of good faith and fair dealing "is not an independent contract term. It is a doctrine that modifies the meaning of all explicit terms in a contract, preventing a breach of those explicit terms *de facto* when performance is maintained *de jure*." *Id.* at 1316-17 (quoting *Alan's of Atlanta, Inc. v. Minolta Corp.*, 903 F.2d 1414 (11th Cir. 1990)).  Moreover, such a cause of action cannot be maintained "(a) in derogation of the express terms of the underlying contract or (b) in the absence of breach of an express term of the underlying contract." *Id.* at 1318 (*citing City of Riviera Beach v. John's Towing*, 691 So.2d 519 (Fla. Dist. Ct. App. 1997)). In other words, a plaintiff "must allege that a specific contractual provision has been breached, causing it damages." *APR Energy, LLC v. Pakistan Power Resources, LLC*, 653 F. Supp. 2d 1227, 1235 (M.D. Fla. 2009).

As described above, the Plaintiffs here allege that the Defendants' breached their contractual obligations.  In this claim, the plaintiffs specifically claim that the Defendants breached their duty by refusing to timely credit payments, charging unwarranted late fees, and assessing unauthorized charges. [Doc. 1-1 at ¶ 139.]  If true, these allegations would constitute breaches of the express provisions of the contract.  [*See, e.g.,* Doc. 1-1 at 61-62.]  Further, the Plaintiffs have alleged that the Defendants deliberately and consciously breached their contractual obligations in an effort to deprive the Plaintiffs of their benefits under the contract.  Accordingly, the Plaintiffs have sufficiently pleaded a claim for breach of the duty of good faith and fair dealing.

-27-

Case No. 1:10-CV-590
Gwin, J.

*12. Breach of Fiduciary Duty*

Under Florida law, "the elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So.2d 348 (Fla. 2002). In general "the relationship between a bank and its borrower is that of creditor to debtor, in which parties engage in arms-length transactions, and the bank owes no fiduciary responsibilities." *Sussman v. Weintraub*, 2007 WL 908280 at *4 (S.D. Fla. March 22, 2007) (quoting *Capital Bank v. MVB, Inc.*, 644 So.2d 515, 518, (Fla. Dist. Ct. App. 1994)) (internal quotations omitted). However, fiduciary relationships between lenders and borrowers have been found to exist in Florida under special circumstances. *Id.* Such special circumstances have been limited to when "the bank knows or has reason to know that the customer is placing his trust and confidence in the bank and is relying on the bank so to counsel and inform him." *Capital Bank*, 644 So.2d at 519 (quoting *Klein v. First Edina Nat'l Bank*, 196 N.W.2d 619 (Minn. 1972)). Special circumstances have also been found "where the lender 1) takes on extra services for a customer, 2) receives any greater economic benefit than from a typical transaction, or 3) exercises extensive control." *Id.* (citing *Torkaz v. Frontier Fed. Sav. & Loan Ass'n*, 656 P.2d 1089, 1094 (Wash. Ct. App. 1983)). Moreover, "facts supporting a claim for breach of fiduciary duty must be pled with particularity." *Sussman*, 2007 WL 908280 at *4 (citing *Parker v. Gordon*, 442 So.2d 273, 275 (Fla. Dist. Ct. App. 1983)). "Where a breach of a fiduciary duty between a bank and its customer has been found, it is generally possible to identify a benefit flowing to the bank as a result." *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. Dist. Ct. App. 1993).

-28-

Case No. 1:10-CV-590
Gwin, J.

In their Complaint, the Plaintiffs provide the conclusory statement that "[t]he Defendants . . . had a fiduciary relationship with . . . Plaintiffs." [Doc. 1-1 at ¶ 103.]  But the Plaintiffs allege no factors showing that the Plaintiff were led to place trust in the bank in any way different from a typical lender-borrower transaction, or had control different than typical to these types of loans, or that the Defendants' profits were greater than a similar transaction—a transaction where a borrower puts almost no money down to buy two condominiums each costing more than three times the borrower's gross income.  The Plaintiffs have not pleaded any special circumstances with the required level of particularity.   Therefore, the Plaintiffs have not stated a sufficient claim for breach of fiduciary duty to survive the Defendants' motion to dismiss.

*13. Negligent Representation and Fraudulent/Intentional Misrepresentation[1]*

In order to state a claim for negligent misrepresentation under Florida law, a plaintiff must allege that "(1) there was a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation." *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. Dist. Ct. App. 1993).  "To state a cause of action for fraudulent misrepresentation, a plaintiff is required to allege the following elements in the complaint: (1) a misrepresentation of a material fact; (2) which the person making the misrepresentation knew to be false; (3) that the misrepresentation was

_____

[1]An intentional misrepresentation is a form of a fraudulent representation, and thus these claims will be considered as one.  *See* Restatement (Second) of Torts § 526 ("A misrepresentation is fraudulent if the maker (a) knows or believes that the matter is not as her represents it to be . . .")

Case No. 1:10-CV-590
Gwin, J.

made with the purpose of inducing another person to rely upon it; (4) that the person relied on the

misrepresentation to his detriment; and (5) that this reliance caused damages." *Romo v. Amedex Ins.*

*Co.*, 930 So.2d 643, 650-51 (Fla. Dist. Ct. App. 2006).

Claims of negligent and intentional misrepresentation (i.e., fraud) must be pled with the

particularity required by the heightened pleading standard of Federal Rule of Civil Procedure 9(b).

*Seoul Broadcasting System Int'l, Inc. v. Ladies Professional Golf Ass'n*, 2010 WL 2035137 (M.D.

Fla. May 21, 2010); *see also Thielen v. GMAC Mortgage Corp.*, 671 F. Supp. 2d 947, 955-57 (E.D.

Mich. 2009).  Rule 9(b) is satisfied if the Complaint sets forth: (1) precisely what statements were

made in what documents or oral representations or what omissions were made; (2) the time and place

of each such statement and the person responsible for making the same; (3) the content of such

statements and the manner in which they misled the plaintiff; and (4) what the defendants obtained

as a consequence of the fraud.  *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371

(11th Cir. 1997); *see also Frank v. Dana Corp.*, 546 F.3d 564, 569-70 (6th Cir. 2008) (To satisfy

Rule 9(b), plaintiffs must, at a minimum, "allege the time, place and contents of the

misrepresentations on which they relied.").

The Plaintiffs' Complaint does not contain specific allegations of who, what, where, and

when to satisfy the heightened pleading standards of Rule 9(b).  Accordingly, their claims for

negligent misrepresentation and for fraudulent/intentional misrepresentation fail.

*14. Civil Conspiracy*

The elements of a claim of civil conspiracy under Florida law are: (1) a conspiracy between

two or more parties, (2) to do an unlawful act or to do a lawful act by unlawful means, (3) the doing

-30-

Case No. 1:10-CV-590
Gwin, J.

of some overt act in pursuance of the conspiracy, and (4) damage to plaintiff as a result of the acts performed pursuant to the conspiracy. *Walters v. Blankenship*, 931 So.2d 137, 140 (Fla. Dist. Ct. App. 2006) (citing *Fla. Fern Growers Ass'n v. Concerned Citizens of Putnam County*, 616 So.2d 562 (Fla. Dist. Cit. App. 1993)).  Generally an actionable conspiracy requires an actionable underlying tort or wrong. *Id.*  However, an alternative basis for a civil conspiracy claim exists where the plaintiff can show some "peculiar power of coercion" possessed by the conspirators by virtue of their combination, which an individual acting alone does not possess. *Id.*; *see also Fla. Fern Growers*, 616 So.2d at 565.  The Plaintiffs allege that the Defendants conspired together to engage in predatory lending and loan servicing practices for their own financial gain at the Plaintiffs' expense.  [Doc. 1-1 at ¶ 121.]  As described above, the Court finds that the Plaintiffs' allegations with respect to these allegedly wrongful practices sufficiently state claims for breach of contract and breach of the duty of good faith and fair dealing.  Accordingly, the Court finds that the Plaintiffs have adequately pleaded a claim of civil conspiracy.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** the Defendants' motion to dismiss, and dismisses the following claims: Count One (HOEPA), Count Two (TILA), Count Three (OMBA), Count Four (breach of fiduciary duty), Count Five (RESPA Section 8), Count Seven (Negligent Misrepresentation), Count Nine (Civil RICO), Count Eleven (Fraudulent Misrepresentation), Count Thirteen (Infliction of Emotional Distress), Counts Fourteen and Fifteen (FDCPA), Counts Sixteen and Seventeen (FCRA), and Count Eighteen (RESPA Section 8).

The Court **DENIES** the Defendants' motion with respect to Count Six (RESPA Section 6),

Case No. 1:10-CV-590
Gwin, J.

Count Eight (Civil Conspiracy), Count Ten (breach of contract), and Count Twelve (good faith and

fair dealing).

     IT IS SO ORDERED.


Dated: August 20, 2010                s/           *James S. Gwin*        
                                       JAMES S. GWIN
                                       UNITED STATES DISTRICT JUDGE